[Crim. No. 2083. Second Appellate District, Division One.—July 17, 1931.]

THE PEOPLE, Respondent, v. CLARENCE JAMES McCLAIN, Appellant.

Guy Lewis and Orville A. Rogers for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Buron Fitts, District Attorney, and Tracy Chatfield Becker, Deputy District Attorney, for Respondent.

HOUSER J.—Defendant was convicted of the commission of the crime of grand theft. He appeals not only from the judgment, but also from the order denying his motion for a new trial.

The first specification of error to which appellant directs attention is that the evidence adduced on the trial of the action was insufficient to support the verdict. In its nature the evidence presented by the prosecution was entirely circumstantial.

It appears that a part of the property which was stolen included a trunk, a large number of rare coins, a cigarette lighter, a knife, a rosary, six $100 bills, and many articles of wearing apparel, all of which, with the exception of the six $100 bills, were found either in the immediate personal possession of defendant, or hidden in various locations about the premises occupied by him. It was shown that shortly after the theft was committed defendant removed from his then residence to a different place of abode, at which latter place he used an assumed name; that although he had a room within which he might have lodged, at one time he slept in an automobile parked on premises used for the sale of second-hand cars; that defendant made contradictory statements regarding the manner in which the cigarette lighter came into his possession; that some of the stolen

coins were found at the head of the bed in a room occupied by defendant, others in a "stack" in the yard of the premises, and 197 of such stolen coins were found in a canvas bag concealed under a plank in the same yard; and the rosary, with other stolen articles (not of this theft), was found wrapped in a handkerchief and secreted behind a wash-basin in defendant's room. The stolen knife, trunk and a three-cent United States bill were found in defendant's automobile. Following the theft of the goods and shortly before defendant was arrested, he used a $100 bill in making a part payment on an automobile which he had acquired, which bill defendant claimed he had secured by exchanging for it ten $10 bills, but which defendant's brother testified he had given to defendant for an automobile which he had purchased from him. After defendant was arrested and before he was taken to jail, while standing in a store awaiting the arrival of the police automobile to convey him to prison, he was seen to "fumble" with his left hand in one of the pockets of his trousers. Immediately thereafter "about an inch and a half or two inches of the pocket" was seen protruding from the trousers and a $5 gold coin of date 1806, which was one of the stolen coins, was found under a cash register which was located in front of where defendant had been standing. At that time defendant denied ownership of the coin, or that he had any knowledge concerning it, although at the trial he testified that his brother had given it to him. Summarized, it thus appears that, besides the possession by defendant of the stolen property, the following incriminatory facts were shown to exist: Secretion of the stolen property; different explanations regarding the manner of acquiring the cigarette lighter and $100 bill which are not in harmony one with the other; when arrested, the attempt to get rid of the $5 gold piece; that circumstance which may be termed the flight of defendant; and the fact that at his new place of residence he gave a fictitious name.

The evidence presented in behalf of defendant and which tended to establish his innocence of the offense of which he was charged consisted principally of testimony of himself, his wife, and one disinterested witness to the effect that at all times on the night when the crime was committed defendant was at his home, and consequently could not have participated

in the commission of the offense. Also a confession by defendant's brother on the trial of the action that it was he and a man known as Joe Carson who committed the crime, and that defendant was in no way connected with its commission. But manifestly the determination of the facts was solely the province of the jury, and if for any one of various reasons it chose to give no credit to the testimony of either or all of the witnesses who testified in behalf of defendant, its conclusion as expressed by its verdict cannot be disturbed by this court, provided that the evidence adduced on behalf of the prosecution was substantial in its nature and of sufficient strength to support the verdict. Necessarily the question whether any set of assumed incriminatory facts in a given case present a situation from which it may be said that they meet the legal requirements as to sufficiency in showing the guilt of a defendant, is one of opinion on which the respective minds of lawyers or judges may differ one from the other. ■ It has long been the rule that possession of stolen property by a defendant, however soon after the crime was committed, is not in itself sufficient evidence upon which to base a verdict of guilt. However, should the defendant make an explanation as to the manner in which he came into possession of such property, the question as to whether he is telling the truth in that regard rests solely with the jury. In the case of *People* v. *Melvane,* 39 Cal. 614, the stolen property consisted of gold and silver coin amounting to $313, "among which were four $20 gold pieces, an Australian sovereign, and a $3 gold piece, considerably worn". It was proved that the defendant was arrested on the day after the burglary, and that there was found on his person $250.50 in gold and silver coin, amongst which were four $20 gold pieces, an Australian sovereign and a $3 gold piece. In considering the circumstances connected with the case, in part the court said: "The weight to be given to the testimony was for the jury to decide; but when money is stolen, proof that a part of it, on the following day, was found on the person of another in the vicinity, certainly tends, when not satisfactorily explained, to raise a presumption that he is the guilty party; *and if an explanation is attempted by the accused, it is for the jury to judge of its truth and plausibility.* The corroborating evidence may be slight, and

entitled to but little consideration; nevertheless, the require· ments of the statute are fulfilled if there be *any* corroborating evidence which, *of itself,* tends to connect the accused with the commission of the offense.''

And in *People* v. *Getty,* 49 Cal. 581, where ''a part of the stolen property consisted of Chilean gold coin—half ounces and a Peruvian ounce'', it is said: ''The possession of money of the same kind as that which was recently stolen is usually of slight, if any, weight as evidence to prove the guilt of the person in whose possession it is found, if money of this kind is in general circulation at that place; but it is of much greater significance when that kind of money is rarely seen in circulation at that place; and its value as evidence is further increased when both the money found in possession of the accused and that which was stolen consists of a combination of pieces of such money, as in this case, of a large number of Chilean half ounces and a single Peruvian ounce. It strongly tends to the identification of the money as the money which was stolen, and thus to connect the defendant with the burglary.''

Aside from objections presented by appellant which are hereinafter considered, it would seem clear that in view of the situation delineated by the circumstances hereinbefore set forth, the jury was authorized to reach the conclusion that defendant was guilty of the commission of the offense of which he was charged. (*People* v. *Lang,* 142 Cal. 482 [76 Pac. 232].)

▬ Appellant complains of the admission by the trial court, over the objection of defendant, of certain evidence relating to the fact that after the crime had been committed, in a transaction regarding the purchase of an automobile, defendant had given as part compensation to the seller thereof a $100 bill. The particular objection by appellant is that the $100 bill paid by defendant was not identified as one of the $100 bills which was a part of the stolen property. ▬ However, as is pointed out in the case of *People* v. *Getty,* 49 Cal. 581, 584, although the fact that defendant used ''money of the same kind as that which was recently stolen'' ordinarily would constitute but slight evidence of the guilt of defendant, nevertheless, if such money was of a kind ''rarely seen in circulation'', the weight to be attached to such evidence is considerably increased—

which is a rather clear indication by the court that evidence of the nature of that to which appellant has directed attention was admissible for the purpose of tending to prove possession by defendant of a part of the stolen property. In passing, it may not be amiss to suggest the unlikelihood that anyone will contend that $100 bills are now, or in recent years have been, in common circulation in this community.

    Appellant presents a further specification to the effect that, to his substantial prejudice, the trial court erred in refusing to give to the jury, at the request of defendant, the following instruction:

"In order to convict the defendant upon the evidence of circumstances it is necessary not only that all the circumstances concur to show beyond a reasonable doubt that a crime was committed as alleged in the information, but that the defendant was the one who committed such crime and that they are inconsistent with any other rational conclusion. It is not sufficient that the circumstances prove, coincide with, account for, and therefore render probable the theory sought to be established by the prosecution, but they must exclude to a moral certainty every other theory but the single one of guilt, or the jury must find the defendant not guilty."

On behalf of respondent it is urged that the principle of law involved in such instruction was fairly covered by the trial court in giving to the jury an instruction by which was pointed out the essential difference between direct evidence and circumstantial evidence, which instruction was concluded with the admonition that: "If upon consideration of the whole case you are satisfied to a moral certainty and beyond a reasonable doubt of the guilt of the defendant, you should so find, irrespective of whether such certainty has been produced by direct evidence or by circumstantial evidence. The law makes no distinction between circumstantial evidence and direct evidence in the degree of proof required for conviction, but only requires that the jury shall be satisfied beyond a reasonable doubt by evidence of either the one character or the other, or both."

But it is apparent that the instruction to which respondent refers merely defined circumstantial evidence and thereafter directed attention to the weight to which such evidence was legally entitled. Aside from the broad general indication to the effect that on the consideration by the jury of circum-

stantial evidence, before it would be authorized to find the defendant guilty the jury must be "satisfied to a moral certainty and beyond a reasonable doubt of the guilt of the defendant"—the instruction contains not even a suggestion of the principle of law set forth in the instruction offered by defendant and refused by the trial court. ▮ The authorities of this state are unanimous in the declaration of the law that when the evidence in a case is entirely circumstantial and admits either of a theory of the guilt or of the innocence of the defendant, upon his request therefor, he is entitled to a special instruction embodying the principles set forth in the instruction to which appellant herein has directed attention and of the refusal of which he here complains. (*People* v. *Dick,* 32 Cal. 213; 8 Cal. Jur. 371, and cases there cited.)

In addition to the foregoing authorities, the case of *People* v. *Heuss,* 95 Cal. App. 680 [273 Pac. 583], is particularly pertinent to the question here involved. It there appears that an instruction requested by the defendant and refused by the trial court was practically identical with the instruction here under consideration. However, on the trial of the cited case an instruction was given to the jury that:

"In order to warrant a conviction for crime on circumstantial evidence, the circumstances taken together should be of a nature and tendency leading on the whole to a satisfactory conclusion and producing in effect a reasonable and moral certainty that the accused and no one else committed the offense charged, and it is the invariable rule and law that to warrant a conviction upon circumstantial evidence alone, *such facts and circumstances must be shown as are consistent with the guilt of the party charged.*"

A judgment of conviction of the defendant was affirmed by the District Court of Appeal; but in denying a hearing of the case, the Supreme Court used the following language: "In denying the petition for a hearing herein, we withhold our approval of the action of the trial court refusing to give the instruction, or its equivalent, requested by defendant to the effect that circumstantial evidence, in order to justify a conviction, must not only be consistent with the guilt of the defendant, but 'inconsistent with any other rational conclusion'. The portion included in quotation marks, or its equivalent, was omitted from the instruction.

Said instruction was legally sufficient in all respects as far as it went, but it fell short in not including the well approved and frequently announced statement of the law that the evidence adduced must not only be consistent with guilt, but 'inconsistent with innocence', in order to justify a verdict of guilty.''

From a consideration of the foregoing authorities, it is clear that the trial court was in error in failing to give to the jury the instruction requested by defendant.

From the fact that before reaching a verdict of defendant's guilt the jury considered the evidence for a period of seven and one-half hours, it well may be questioned whether, if the jury had had the benefit of such refused instruction, it would not have brought in a verdict of acquittal, or at least that a disagreement by the jury would have resulted. At any rate, it is impossible for this court to judicially declare that in the circumstances defendant was not prejudicially affected in his substantial rights in the premises.

The judgment and the order denying the motion for a new trial are reversed.

Conrey, P. J., concurred.