PEOPLE v. WEISER.

CRIMINAL LAW—LARCENY—EQUALLY DIVIDED COURT.
In prosecution of woman for alleged larceny of $2,300 from her stepson, conviction is affirmed by an equally divided court (Act No. 328, § 356, Pub. Acts 1931).

Appeal from Recorder's Court for City of Detroit; Stein (Christopher E.), J. Submitted June 17, 1943. (Docket No. 98, Calendar No. 42,129.) Decided November 29, 1943. Rehearing denied January 13, 1944.

Rose Weiser was convicted of larceny. Affirmed by an equally divided court.

*C. Walter Healy,* for appellant.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *William E. Dowling,* Prosecuting Attorney, and *Frank J. Wendt* and *Henrietta E. Rosenthal,* Assistant Prosecuting Attorneys, for the people.

Bushnell, J. (*for reversal*). Defendant, Rose Weiser, a married woman 46 years old, was charged with larceny of $2,300,* belonging to her stepson, John Weiser, Jr., and with embezzlement thereof. The embezzlement count was dismissed by the trial judge and the jury found her guilty of larceny. Defendant's motion for a new trial on the ground of newly-discovered evidence and that the verdict was against the great weight of the evidence and contrary to law was denied. Leave having been granted, defendant appealed. Because of the peculiar nature of the case, the facts are important.

When defendant and her husband, John, were married in 1918, defendant's stepson, the complaining witness, John, Jr., was still in Austria. From 1920 to 1928, while her husband was working in a factory, defendant operated a confectionery store, in which it is claimed the larceny occurred. From 1928 until 1937 both the defendant and her husband worked in the store. In 1935 defendant helped to bring the complaining witness, John, Jr., to America at a cost of over $1,000. From 1937 to 1940 there were domestic difficulties between defendant and her husband, a divorce was started and dismissed. Thereafter defendant and her husband continued to live together and she helped in the store evenings, in addition to operating a sandwich shop at another location. About March 1, 1941, defendant's husband took the key to the confectionery store from her key ring, which she inadvertently left on a shelf in the store. About this time there was a recurrence of their domestic difficulties.

On the morning of March 12, 1941, defendant secured a locksmith to open the store and, while she and the locksmith were so engaged, a police officer,

---

* See Act No. 328, § 356, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 17115-356, Stat. Ann. § 28.588).—Reporter.

who was patrolling his beat, made inquiry and was informed by defendant that she had forgotten her key. This officer testified that, having seen her in the store many times and because he knew her and her husband, there was nothing to excite his suspicions. Defendant entered the store, took some papers out of a secret hiding place in a wall case, which she said she needed to assist her in starting divorce proceedings, after which she waited on customers until her husband arrived. She said: "I told him I had the papers and I would finish the case this time." She filed a bill of divorce on the same day. A divorce decree granted defendant on March 13, 1942, shows that she and her husband owned considerable property, namely, a home, two gasoline stations, the confectionery store, shares of stock, and some life insurance.

On August 23, 1941, five months after defendant had taken the papers, her stepson, John Weiser, Jr., filed a formal complaint charging defendant with larceny of $2,300. He claimed that the secret hiding place, to which he, his father and stepmother had access, contained three sealed envelopes, one containing $1,000, two others containing $500 each, and a bank book with $300 cash in it, which book showed a balance on deposit of $2,021.19. He testified that when he first came from Austria he earned from $25 to $30 a week, and later he earned from $20 to as much as $100 a week, and that the money on deposit in the bank was accumulated out of his wages from 1935 to 1939, and the money in the secret hiding place was saved since the date of the last deposit, August 21, 1939.

After the case had been submitted and the jury had deliberated for an hour and three quarters, its members were recalled by the trial judge to determine whether they had been able to agree upon a

verdict, and were examined as to whether the difficulty was a question of fact or of law. When the foreman replied that it was a question of fact, the judge advised the jury that they should not act in a stubborn manner, and, after some elaboration on the subject, sent them back for further deliberation. The record does not show how much more time was spent in deliberation before they returned a verdict of guilty of larceny of $2,300, as charged.

There is no doubt from the testimony that defendant, her husband and her stepson all had access to the hidden box and that, at the time, domestic difficulties were at a high tension. Nor can there be any doubt about the fact that defendant was an industrious, hard-working woman, who not only assisted her stepson financially, but she also helped her husband accumulate considerable property.

We are mindful that appellate courts should not usurp the functions of a jury, and that, where there is evidence to sustain the charge in the information, such evidence should not be weighed on appeal.

"No rule of appellate practice is more firmly settled than that the weight of the evidence is for the jury passing on the facts, and that as a general rule, an appellate court will not pass upon the weight or preponderance of the evidence. The only determination for the appellate court is whether there is any evidence to support the finding of the jury, and where there is no evidence to support the verdict, the appellate court may reverse it. The evidence in the trial court must be accepted as true unless inherently impossible or improbable. The verdict will not be disturbed unless the reviewing court, after allowing all reasonable presumptions as to the correctness of the judgment denying the motion for a new trial, is clearly of opinion that the preponderance of the evidence against the verdict

is so decided as to render the verdict wrong and unjust, though really the question is no longer one as to the preponderance of the evidence, but only as to whether or not the evidence was legally sufficient to support the verdict. But while a reviewing court hesitates to set aside a verdict on the ground of insufficiency of the evidence, especially when the trial judge has refused to do so, still if it is flagrantly contrary to the evidence and the court is convinced that an injustice has been done, it will and should set it aside, not only in criminal, but also in civil, cases." 3 Am. Jur. p. 449, § 890.

Appellant, by her motion for a new trial, challenged the court's attention to the fact:

"(a) That there was no evidence whatsoever of any taking of the property of another.

"(b) That the evidence merely showed that there was an opportunity on the part of the defendant to take the property alleged to have been stolen and the evidence disclosed that defendant's husband had an equal opportunity to take the said property.

"(c) That the verdict of the jury was based upon speculation; that the evidence was equally consistent with innocence as well as guilt and that there was no evidence whatsoever to indicate or to establish that defendant's husband did not have the said money."

In her motion she also asserted that the verdict of the jury was contrary to law for the reason:

"(a) Because the defendant could not be guilty of 'larceny from a store' where the store in question is rented by her husband and owned by her husband and herself.

"(b) Because the defendant could not be guilty of 'larceny from a store' where there is a claimed color of right on the part of the defendant to the ownership of the said store.

"(c) Because a wife cannot be guilty of larceny of goods or property in the possession of her husband."

As an additional reason why a new trial should be granted, defendant stated:

"That since the trial of the said cause, the defendant has discovered new evidence, strongly indicative of the fact that John Weiser, father of the complaining witness, and husband of the defendant, was in possession of the stolen funds subsequent to * * * the commission of the offense * * * that such evidence was not discovered by the defendant or her attorney until after the trial of the above-entitled cause, and until after she had been convicted of the said offense.

"That the foregoing evidence consists of proof by affidavit on the part of the said John Weiser; that he was without funds at or about the time that the funds were alleged to have been stolen, in the above-entitled cause, and that shortly thereafter, the said John Weiser lent the sum of $1,500 upon a promissory note."

The people's case was based solely upon weak circumstantial evidence, and we are considerably impressed by the unexplained delay between the date of the alleged larceny and the filing of the complaint after defendant had commenced a second divorce proceeding against the complainant's father.

As was said in *LeFevre* v. *State,* 242 Wis. 416 (8 N. W. [2d] 288, 294):

"Circumstantial evidence will sustain a conviction only where all the incidents are satisfactorily established and are consistent with the happening of some particular event, and inconsistent with any other reasonable theory than that they tell the

correct story of how such event happened to take place. *Loguidice* v. *State,* 160 Wis. 17, 20 (150 N. W. 980); *Wittig* v. *State,* 235 Wis. 274, 281 (292 N. W. 879).

"At the conclusion of the State's case, and again when all the evidence was in, defendant's counsel moved that defendant be discharged on the ground that the evidence failed to establish his guilt beyond a reasonable doubt. Both motions were denied. Upon the whole record we cannot say that the proof is sufficient to enable the jury to find that defendant was guilty beyond a reasonable doubt."

See, also, *State* v. *Donelli,* 324 Mo. 200 (22 S. W. [2d] 781); *O'Neal* v. *State,* 179 Ark. 1153 (15 S. W. [2d] 976); *People* v. *Heuss,* 95 Cal. App. 680 (273 Pac. 583); and *Commonwealth* v. *McTague,* 112 Pa. Super. 471 (171 Atl. 406).

In view of the testimony, no purpose would be served by remanding this cause for another trial. Accordingly, the judgment should be reversed and the defendant discharged.

CHANDLER, STARR, and BUTZEL, JJ., concurred with BUSHNELL, J.

SHARPE, J. (*for affirmance*). I cannot concur in the opinion of Mr. Justice BUSHNELL. His opinion is based upon the proposition that the evidence relied upon for conviction is "weak circumstantial evidence" and upon "the unexplained delay between the date of the alleged larceny and the filing of the complaint after defendant had commenced a second divorce proceeding against the complainant's father."

In this case there is evidence that on March 12, 1941, the complaining witness was the owner of a box which he had concealed in the store; that this

box contained three sealed envelopes holding $2,000 and a bank book in his name showing a deposit of $2,021.19; that the last deposit showing in the bank book was on August 21, 1939; and that the complaining witness, his father, and the defendant were the only people who knew where the box was hidden. There was no testimony directly identifying defendant as the person who took the money, but it is an admitted fact that defendant took from the box a bank book and other papers, not her property, and only returned them when so directed by the prosecuting attorney. The above-discussed testimony, together with other evidence, clearly presented a question of fact as to defendant Rose Weiser's guilt for consideration by the jury. The jury are the judges of the facts. They saw and heard the defendant and other witnesses. Determining the credibility of witnesses and weighing the evidence are functions of the jury. I am convinced that there was ample evidence, though some of it was circumstantial in nature, from which the jury could reasonably find defendant guilty beyond a reasonable doubt of the crime charged. I am not impressed by the fact that a complaint was not made until some time after the crime was committed, as in cases of this kind the authorization of such a complaint lies in the hands of the prosecuting attorney. There is an abundance of evidence that the police were called in shortly after the larceny occurred.

We have examined other rulings complained of and find in them no error of substance. The judgment of conviction is affirmed.

Boyles, C. J., and North, and Wiest, JJ., concurred with Sharpe, J.